UNITED STATES of America, Plaintiff,

Rhona Green et al., Applicants for Plaintiff Intervention,

v.

CITY OF PHILADELPHIA et al., Defendants,

Fraternal Order of Police, Defendant–Intervenor.

Penelope BRACE, Plaintiff,

v.

Joseph F. O'NEILL, Police Commissioner et al., Defendants.

Lucy SANFORD, Shirley Black, Mari Pritchard, Patricia Sullivan, Carolyn Carter, Brenda Williams and Ernestine McCullough, Plaintiffs,

v.

Joseph F. O'NEILL et al., Defendants.

Civ. A. Nos. 74–400, 74–339 and 78–1154.

United States District Court, E. D. Pennsylvania.

Sept. 30, 1980.

William B. Fenton, John M. Gadzichowski, Cathy S. Surace, Dept. of Justice, Civ. Rights Div., Washington, D. C., for plaintiff United States of America.

Alan J. Davis, City Sol., John M. Myers, Deputy City Sol., Philadelphia, Pa., for defendants City of Philadelphia, et al.

Helen T. M. McCaffrey, Philadelphia, Pa., for plaintiffs Patricia Sullivan, Carolyn Carter and Ernestine McCullough.

Frank Finch, III, Philadelphia, Pa., for Penelope Brace.

Burton Rose, Philadelphia, Pa., for Fraternal Order of Police.

Judith E. Harris, Philadelphia, Pa., for objectors to proposed order.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

These actions originated on February 12, 1974, with Penelope Brace's lawsuit, (*Brace v. O'Neill et al*, C.A. No. 74–339), in which Brace sought reinstatement to her employment as a policewoman,[1] to restrain discrimination in police assignments and denial of the opportunity for promotion because of sex.

The United States filed its suit on February 19, 1974 (*U.S.A. v. City of Philadelphia et al*, C.A. No. 74–400) alleging that the City discriminated against females with respect to job opportunities in the Philadelphia Police Department, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, the Fourteenth Amendment to the Constitution of the United States, and the guidelines of the Department of Justice and the Law Enforcement Assistance Administration which provide for equal employment opportunity in federally funded programs and activities, 28 C.F.R. § 42.201, *et seq.* On December 18, 1974, the *United States* action was consolidated with the *Brace* action.

On April 13, 1978 Lucy Sanford, Shirley Black, Mari Pritchard, Patricia Sullivan, Carolyn Carter, Brenda Williams, and Ernestine McCullough filed an action against the City of Philadelphia and Police Commissioner Joseph F. O'Neill alleging that the police department had unlawfully rejected them for appointment as police officers, (*Sanford et al. v. O'Neill et al*, C.A. No. 78–1154). On February 27, 1979, that action was consolidated with the *Brace* and the *United States* actions.

On February 19, 1980, Rhona Green, Patsy Matthews, Harriett L. Farr, and Julie Schrant, individually and on behalf of all other similarly situated Philadelphia female police officers, filed a motion to intervene in the *United States* action, a motion for designation as a class action, and a motion to enjoin the City's contemplated layoff of police officers on the ground that such layoff would have a disproportionate impact upon female police officers.

On July 15, 1980, the plaintiffs United States, Patricia Sullivan, Carolyn Carter, and Ernestine McCullough, and the defendant City of Philadelphia filed a joint motion for entry of a consent order. The terms of the proposed consent order were agreed to by plaintiffs Rhona Green, et al, Mari Pritchard, Lucy Sanford, Rose Waters, and Shirley Black.

The proposed consent order provides prospective and remedial relief for females. The central provisions require that the City:

1. Cease discriminating against females with respect to job opportunities in the Philadelphia Police Department and, in particular, that the City comply with the Federal Executive Agencies' *Uniform Guidelines on Employee Selection Procedures*, 43 F.R. 38290, *et seq.* (August 25, 1978), and with

the Equal Employment Opportunity Commission's *Employment Policies Relating to Pregnancy and Childbirth*, 44 F.R. 23804, *et seq.* (April 20, 1979) (Order, para. 1);

2. Adopt and seek to achieve a thirty percent (30%) annual hiring goal for females in the hire of the next 2,670 police officers (Order, para. 4);

3. Adopt and put into effect a recruitment program on behalf of females to ensure that the City meets the thirty percent (30%) annual hiring goal for females set forth in paragraph 2, *supra* (Order, para. 5);

4. Undertake sufficient affirmative action in the filling, by transfers, of police officer vacancies which hereafter occur in the Police Department's special units to ensure that female police officers are fully integrated in such units within twelve (12) months from the date of entry of the Order, and remain so integrated throughout the life of the Order (Order, para. 8);

5. Promote thirty–three (33) of the Police Department's current 186 female police officers to the next vacancies which occur in the ranks of detective (16) and sergeant (17) (Order, paras. 12 and 13);

6. Provide the sum of $700,000.00 in back pay, as well as retroactive seniority credit, pension benefits and, where applicable, job offers and promotion, to those incumbent female police officers, rejected applicants and futility claimants who the United States contends have been the victims of the City's unlawful practices (Order, Part V); and

7. Provide the sum of $37,328.56 to the United States for the costs it has incurred in this action (Order, Part VIII).

Objections to the proposed consent order have been made by Penelope Brace and numerous other female police officers. Approximatley nine female police officers filed affidavits setting forth their grounds for objecting to the proposed consent order, that they were not included in the list of officers for whom relief was being provided in the proposed consent order.

On August 11 and 13, 1980, this Court conducted a hearing on the joint motion for entry of a consent order and the objections thereto. Oral argument in support of their respective positions was made by counsel for the United States, the City of Philadelphia, the Fraternal Order of Police, Penelope Brace, and the other incumbent policewomen and female police officers who had filed objections to the proposed consent order. The court heard testimony of six incumbent female police officers who had filed objections, and of the attorney with the Department of Justice who had interviewed the female police officers and who had participated in the Department's determination not to seek relief on their behalf.

Counsel for the United States and for the City argue that this Court should enter the proposed consent order and accompanying stipulation because the proposed consent order provides both prospective and remedial relief on behalf of females which is necessary and proper to eradicate the effects of the City's pattern or practice of discrimination against females with respect to job opportunities in the Police Department.

Counsel for the individual objectors, other than Penelope Brace, argues that the Court should disapprove the settlement because the peculiar set of circumstances in these cases weigh against the entry of the proposed decree. Counsel argues that the entry of the proposed consent order will preclude the objectors from bringing their own individual lawsuits to redress their grievances, since the time for filing them has passed.

Counsel for Penelope Brace argues that the settlement should be disapproved because the settlement does not provide Brace with 100% of the total sum of back pay; and, further, that Brace is required to sign a waiver if she accepts the money offered. The United States and the City have agreed

to provide Brace with a statement in the notice letter stating:

"... you will not be deemed to have waived *any* relief to which you may be entitled in your own case, *Brace v. O'Neill, et al,* civil action no. 74–339 (E.D. Pa.)"

After careful review of all of the pleadings and of the testimony offered, we shall approve the settlement, and we shall enter the proposed consent order.

■ A proposed consent decree in a Title VII case is entitled to a presumption of validity, and we need only determine that the proposed settlement is not unconstitutional, unlawful, contrary to public policy, or unreasonable before granting approval. *United States v. City of Miami et al,* 614 F.2d 1322, 1333 (5th Cir. 1980),[2] *United States v. City of Alexandria,* 614 F.2d 1358, 1361 (5th Cir. 1980), *EEOC v. American Tel. & Tel. Co.,* 556 F.2d 167 (3rd Cir. 1977), *cert. denied,* 438 . U.S. 915, 98 S.Ct. 3145, 57 L.Ed.2d 1161 (1978). No objector has presented this Court with any evidence to overcome the presumption of validity.

■ This presumption of validity means that we must have a principled reason for refusing to sign the consent decree presented here. A refusal to sign a consent decree based on generalized notions of unfairness is unacceptable. *United States v. City of Miami, supra.*

As noted by the *Miami* court, Congress has put an extremely high premium on voluntary settlement of Title VII suits. 614 F.2d at 1322. The Court, at page 1331 cited the case of *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39

L.Ed.2d 147 (1974) where the Supreme Court said:

"Cooperation and voluntary compliance were selected [by Congress] as the preferred means for achieving [the goal of elimination of unlawful employment discrimination]."

When objections to the settlement are presented, the burden must be on the objectant to convince the Court to disapprove the proposed settlement, and the trial court's reasoned approval of the settlement will be entitled to much deference. Otherwise, the policy of voluntary compliance with Title VII could be severely thwarted by the interposition of objections to the settlement. *United States v. City of Miami,* 614 F.2d at 1334.

We shall examine the objections which have been filed.

The United States argues that the objections of Penelope Brace should be overruled because they were not timely filed under local rule 36 of the United States District Court for the Eastern District of Pennsylvania.[3] On July 10, 1980, counsel for Brace was personally served with a copy of the proposed consent order along with written notification that the United States and the City intended to file on July 15, 1980, a joint motion for its entry. The joint motion was filed on July 15, 1980 and a hearing was scheduled by this court for August 11, 1980. Brace failed to file her objections on July 15, 1980. It was not until August 7, 1980, 29 days after her counsel was served and 4 days before the August 11, 1980 hearing, that Brace filed her objections.

The United States further argues that neither Penelope Brace nor the other four-

---

2. On August 26, 1980 the United States Court of Appeals for the Fifth Circuit entered an order in *United States v. City of Miami,* 625 F.2d 1310 (5th Cir. No. 77–1856), granting appellant's petition for rehearing and suggestion for rehearing *en banc* and vacating the panel's decision, 614 F.2d 1322 (5th Cir., 1980).

Nevertheless we agree with and adopt the reasoning and holding of the *Miami* case.

3. Local rule 36 provides, in relevant part, that:

... A copy of each motion and memorandum or brief shall be served upon opposing parties

together with a notice of the date on which the motion will be filed, which date shall not be less than five (5) days after the date of such notice.... Any party desiring to oppose the granting of such motion or application shall file with the Judge to whom the case is assigned a brief or memorandum in opposition thereto, not later than 10:00 A.M. of the date set for filing such motion....

teen policewomen and female police officers have standing to object because they are not parties to the *United States* action, nor have they sought to intervene in the *United States* action pursuant to Rule 24, F.R.C.P.

 Congress in enacting Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, gave the Attorney General the authority to bring independent "pattern or practice" causes of action against public employers under Section 707 of Title VII (42 U.S.C. § 2000e–6), and authorized private litigants to bring their own separate causes of action under Section 706 of Title VII (42 U.S.C. § 2000e–5). Where a statute provides for both Government and private suits, they may proceed simultaneously or in disregard of each other, since different policy considerations govern each of these. *Sam Fox Publishing Co., Inc. v. United States*, 366 U.S. 683, 689, 81 S.Ct. 1309, 1312, 6 L.Ed.2d 604 (1961). A private individual or association does not have an unconditional right of intervention in a "pattern or practice" action brought by the Government under § 707. *United States v. Allegheny–Ludlum Industries, Inc.*, 517 F.2d 826, 843 (5th Cir. 1975). That court went on to say at page 843:

> "It was unquestionably the design of Congress in the enactment of § 707 to provide the government with a swift and effective weapon to vindicate the broad public interest in eliminating unlawful practices, at a level which may or may not address the grievances of particular individuals. *See Rodriguez v. East Texas Motor Freight*, 5 Cir. 1974, 505 F.2d 40, at p. 66; *United States v. International Ass'n. of Bridge, Structural, and Ornamental Iron Workers*, 7 Cir. 1971, 438 F.2d 679, *cert. denied* 404 U.S. 830, 92 S.Ct. 75, 30 L.Ed.2d 60 (1971). Rather, it is to those individual grievances that Congress addressed § 706, with its attendant requirements that charges be filed, investigations conducted, and an opportunity to conciliate afforded the respondent when "reasonable cause" has been found. On the other hand, the mere fact that some charges were filed, or that efforts were made toward conciliation, does not in our view transform what the government may properly bring and does bring as a § 707 'pattern or practice' action into a § 706 action. *See United States v. Ironworkers Local 86*, 9 Cir. 1971, 443 F.2d 544, 551–52, *cert. denied*, 404 U.S. 984, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971)."

 The proposed consent decree provides comprehensive relief for females in the Philadelphia Police Department. The objectors focus on the back pay which they claim is due them. Each objector, other than Brace, testified in person or by affidavit that she would have joined the police department prior to 1975 but did not do so because either she applied and was not accepted, or did not apply because it would have been futile because of the police department's practice of discrimination against females at that time. The witness for the Government, Cathy S. Surace, an attorney with the Justice Department, testified that she interviewed, by telephone, approximately 180 out of a total of 186 incumbent female Philadelphia police department police officers, which included the objectors to the proposed consent decree. Surace further testified that she asked each officer whether she had applied for the job of policeman or police officer prior to her application for the 1975 or 1978 examination for policemen or police officer, and whether the officer had been interested in the job of policeman or police officer prior to the date she actually applied but had not done so because she thought it would have been futile.

Surace testified that each of the objectors interviewed told her that she, the objector, either had not applied prior to 1975 or was not interested in the job of policeman or police officer prior to 1975. She therefore recommended that these females not be included in the group for whom relief was sought.

The Court was impressed with the testimony of Surace, and there is no reason to

reject it. Surace is an attorney with the United States Department of Justice. She has neither personal nor pecuniary interest in the outcome of this litigation and the Court places credence in her testimony, whereas the objectors who do have a personal and pecuniary interest, affirmed Ms. Surace's testimony. In some instances, at the hearing by the Court on August 11, and 13, 1980, they contradicted their own previously filed affidavits.

We therefore reject the contentions filed by the objectors.

The Fraternal Order of Police (FOP) have suggested modifications to the proposed consent decree. The FOP states it takes a neutral stance to the proposed consent decree. It is in a peculiar situation since its membership is composed of both male and female police officers. It cannot oppose the proposed settlement because that would offend the female members, and it cannot consent to the proposed settlement since that would offend the male members who would be affected by the promotion relief set forth in Part IV of the settlement agreement. They do suggest that additional positions be authorized so that more appointments can be made.

██ The modifications suggested are opposed by the Government and the City. The FOP suggests a modification to provide that if any male officer has "demonstrably superior qualifications" as compared to any female officer who would be promoted under Part IV of the settlement agreement, that the promotion should go to the male officer. This the Court rejects as this would defeat the relief agreed to by the City and Government and would create more problems than it would solve.

Since Penelope Brace retains her rights and is not prejudiced by the proposed consent decree, the Court will overrule her objections.

### ORDER

1. All objections are proposed modifications to the proposed consent decree are overruled.

2. The proposed consent decree which is attached hereto is approved.

IT IS SO ORDERED.

### CONSENT ORDER.

The United States filed its action on February 19, 1974 against the City of Philadelphia, the Commissioner of Police, the Director of Personnel and the City of Philadelphia Civil Service Commissioners (hereinafter collectively referred to variously as the "City of Philadelphia" or the "City"), alleging, *inter alia*, that the City was engaged in a pattern or practice of employment discrimination against females with respect to job opportunities in the Philadelphia Police Department, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, the Fourteenth Amendment to the Constitution of the United States and the guidelines of the Department of Justice and the Law Enforcement Assistance Administration which provide for equal employment opportunity in federally–funded programs and activities, 28 C.F.R. § 42.201, *et seq.* Thereafter, on December 18, 1974, the United States' action was consolidated with a related lawsuit which had been filed by then Policewoman Penelope Brace (*Brace v. O'Neill, et al.*; Civil Action No. 74–339).

Trial in these consolidated actions commenced on February 10, 1976. After plaintiffs had completed their case–in–chief and the City had begun to present evidence, the United States and the City consented to the entry of an Interim Consent Order. That Order, entered by the Court on March 5, 1976, provided, *inter alia*, that trial be suspended for a period of up to two (2) years during which time the City would be permitted to study the performance of one hundred (100) female police officers hired pursuant to the Order, to compare their performance with a like number of newly–hired male officers, and to submit the results of such study to the Court.

Following the submission to the Court by the City of its study, trial resumed on August 14, 1978, and continued on an intermittent basis for ten (10) days until September 18, 1978, when all parties rested.

Meanwhile, on April 10, 1978, plaintiffs Lucy Sanford, Shirley Black, Mari Pritch-

ard, Patricia Sullivan, Carolyn Carter, Brenda Williams and Ernestine McCullough filed a complaint against former Police Commissioner Joseph F. O'Neill and the City of Philadelphia, alleging that the Police Department had unlawfully rejected them for appointment as police officers. That action, *Sanford, et al. v. O'Neill, et al.;* Civil Action No. 78–1154, was consolidated with the *United States* and *Brace* actions by the Court on February 27, 1979.

On February 14, 1979, the Court entered its decision on the merits with respect to the City's defense that maleness is a bona fide occupational qualification ("BFOQ") for the job of police officer and its minimum height requirement for that position. The Court concluded that the City had failed to demonstrate either that maleness is a BFOQ for the job of police officer or that its minimum height requirement of 5'3½" for female applicants for that position is a valid predictor of successful performance. In the order which accompanied its decision, the Court directed that the City eliminate its minimum height requirement of 5'3½" for female officers and refrain from adopting any minimum height requirement unless it is first shown to be a valid predictor of successful job performance; the Court also enjoined the City from engaging in any act or practice with respect to recruitment, hiring, assignment, discipline, retention or promotion of police officers in the Philadelphia Police Department which has the purpose or the effect of discriminating on the basis of sex.

On March 26, 1979, the United States filed a Motion for the Entry of Relief, accompanied by detailed proposed findings of fact and conclusions of law and a memorandum in support, requesting, *inter alia,* that the Court enter an order providing for: prospective relief; remedial relief for individual female victims of the City's pattern or practice of discrimination; records production and reporting by the City; and retention of jurisdiction of these actions by the Court for the purpose of entering all orders, judgments and decrees necessary to effectuate the City's full and complete compliance with Title VII and the orders of the Court.

By letter dated December 27, 1979, the Court directed counsel for all parties in the above–styled actions to submit all motions they wished the Court to act upon, including but not limited to motions for relief. Thereafter, on January 31, 1980, the United States filed a Supplemental Motion for the Entry of Relief.

In addition to its Motion for the Entry of Relief and its Supplemental Motion for the Entry of Relief, the United States has filed various motions for injunctive relief on behalf of individual females and classes of females alleged to have been harmed by the City's pattern or practice of discrimination, among them:

Motion of Plaintiff United States for an Order Requiring Defendants to Transfer Officer Dorothy Thomas and Officer Penelope Brace (filed June 2, 1978);

Application for a Temporary Restraining Order and Motion of Plaintiff United States for a Preliminary Injunction with respect to promotions of incumbent officers by the Philadelphia Police Department to the ranks of detective, corporal and sergeant (filed January 31, 1979);

Motion of Plaintiff United States for a Preliminary Injunction with respect to promotions of incumbent officers by the Philadelphia Police Department to the ranks of detective, corporal and sergeant (filed March 5, 1979);

Motion of Plaintiff United States for Contempt or, in the Alternative, for Supplemental Relief with respect to the continued unlawful assignment and transfer practices of the Philadelphia Police Department (filed April 18, 1979);

Motion of Plaintiff United States for Supplemental Relief with respect to Officer Frances Neiley (filed April 18, 1979); and

Motion of Plaintiff United States for Injunctive Relief with respect to thirty–three female police officers who were laid off on February 29, 1980 (filed March 14, 1980).

The Court has not yet ruled upon either the Motion of the United States for the Entry of Relief or the Supplemental Motion of the United States for the Entry of Re-

lief. Additionally, although the Court has addressed and ruled upon some parts of some of the above–listed motions of the United States, the Court has not yet ruled upon others, either in total or in part.

The United States, Patricia Sullivan, Carolyn Carter and Ernestine McCullough, and the City of Philadelphia—desirous of avoiding the burden and expense of further contested litigation and desirous of ensuring that proper prospective and remedial relief be provided to females in order to remedy the effects of the City's prior discriminatory practices against females with respect to employment opportunities in its Police Department—hereby agree and consent to the entry of this Order. Further, the United States, Patricia Sullivan, Carolyn Carter and Ernestine McCullough, and the City of Philadelphia, by agreeing and consenting to the entry of this Order, waive a hearing and the entry of findings of fact and conclusions of law on all issues resolved herein. Lastly, this Order is final and binding between the parties signatory hereto and their successors as to the issues resolved herein, as well as upon all persons who consent to and accept the relief provided herein.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

## I

### PERMANENT INJUNCTION

1. The City of Philadelphia, and its officials, employees, agents and all persons in active concert or participation with them are hereby permanently enjoined from engaging in any act or practice with respect to the recruitment, hire, assignment, transfer, promotion, discipline, retention, compensation, or terms and conditions of employment of police officers in the Philadelphia Police Department which has either the purpose or the effect of discriminating against any female on the basis of sex.

a. In this regard, the City is specifically enjoined permanently from utilizing any new practice, criterion or device for the selection of applicants for hire, assignment, transfer or promotion which has an adverse impact upon females, unless the City first demonstrates to the Court, upon hearing after at least sixty (60) days notice to the United States, that such selection practice, criterion or device is required by business necessity and has been validated in accordance with Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and with the *Uniform Guidelines on Employee Selection Procedures* issued pursuant thereto, 43 F.R. 38290, *et seq.* (August 25, 1978) or successor guidelines. However, under no circumstances may the utilization by the City of any new practice, criterion or device for the selection of applicants for hire which has an adverse impact upon females constitute a defense for the City's failure to meet the hiring goal for females for the position of police officer, as set forth in Part II, *infra.*

b. In this regard, the City further is specifically enjoined permanently from engaging in any employment policy or practice with respect to pregnancy, childbirth or any other related medical condition affecting applicants for employment in or employees of the Philadelphia Police Department which does not comply with Title VII, and with the *Employment Policies Relating to Pregnancy and Childbirth* issued by the Equal Employment Opportunity Commission pursuant thereto, 44 F.R. 23804, *et seq.* (April 20, 1979) or successor policies.

2. The City of Philadelphia hereby designates the following individual as its Compliance Officer, responsible for coordinating and overseeing the City's compliance with this Order:

John M. Myers
Deputy City Solicitor
City of Philadelphia
Municipal Services Building
Fifteenth Floor
Philadelphia, Pennsylvania 19107
AC 215/MU6–5277

If the City subsequently changes its Compliance Officer, it shall promptly notify the United States as to the name, title, mailing address and business telephone number of that Officer's successor.

3. The United States hereby designates the following individual as its Compliance

Officer for the administration and enforcement of this Order:

John M. Gadzichowski
Senior Trial Attorney
Federal Enforcement Section
Civil Rights Division
Department of Justice
Main Justice Building—Room 4511
Washington, D.C. 20530
AC 202/633–4134

If the United States subsequently changes its Compliance Officer, it shall promptly notify the City as to the name, title, mailing address and business telephone number of that Officer's successor.

## II

### HIRING AND RECRUITMENT OF FEMALES FOR THE POSITION OF POLICE OFFICER

4. Subject to the availability of qualified female applicants on the then–current police officer eligibility list, the City of Philadelphia shall adopt and seek to achieve a thirty percent (30%) annual hiring goal for females in the hire of the next 2,670 persons for the position of police officer in the Philadelphia Police Department.

5. The City of Philadelphia shall immediately adopt and put into effect a recruitment program designed to inform females of opportunities to apply for and fill the position of police officer in the Philadelphia Police Department, for the purpose of securing sufficient numbers of qualified female applicants to ensure that the City meets the thirty percent (30%) annual hiring goal for females set forth in Paragraph 4, *supra*. Such recruitment program shall include, but need not be limited to: advertisements of employment opportunities placed through television, radio stations, newspapers and other types of mass media for the purpose of emphasizing to females the availability of employment opportunities in the position of police officer, and the active recruitment of females enrolled at high schools, technical and vocational schools, and colleges in the Philadelphia area.

6. The City of Philadelphia shall immediately discontinue using for the purpose of selecting applicants for hire in the position of police officer in the Philadelphia Police Department the eligibility list which resulted from the written examination for that position which was administered by the City on June 24, 1978.

7. Henceforth and until such time as the requirements of Part II of this Order have been satisfied, the City of Philadelphia shall not use for a period of time of more than two (2) years from its establishment any eligibility list resulting from a written examination administered by the City for that position. The failure of the City to meet the thirty percent (30%) annual hiring goal of paragraph 4, *supra*, at any time within the two (2) year life of any eligibility list shall not cause the City to be required to supplement such list or to increase the thirty percent (30%) annual hiring goal for any subsequent year unless the Court determines that the failure to meet such goal during such period was caused, in part, by the City's non–compliance with Part I and/or Part II of this Order. When the next 2,670 persons have been hired in the position of police officer, the obligations of the City under Part II of this Order shall cease automatically, whether the annual hiring goals set forth in paragraph 4, *supra*, have been met, unless the Court determines that the failure to meet such goals was caused, in part, by the City's non–compliance with Part I and/or Part II of this Order.

## III

### TRANSFER RELIEF FOR INCUMBENT FEMALE POLICE OFFICERS

8. Subject to the availability of incumbent female police officers who (a) are interested in transfer and (b) currently have "satisfactory" performance ratings, the City of Philadelphia shall undertake sufficient affirmative action in the filling of police officer vacancies which hereafter occur in the non–sector patrol, special units of the Philadelphia Police Department to ensure that female police officers are integrated in such special units within twelve (12) months from the date of entry of this Order, and remain so integrated throughout the life of this Order. This paragraph 8 is not intended to require that the City assign

any minimum number of female police officers to any particular special unit of the Philadelphia Police Department; however, this paragraph 8 is intended to facilitate the assignment of female police officers to as many special units of the Philadelphia Police Department as is feasible.

9. In order to facilitate the transfer relief provided in paragraph 8, *supra*, the City of Philadelphia shall notify each incumbent female police officer in the Philadelphia Police Department that:

a. She has the right to request transfer, and be considered for transfer, to any non–sector patrol, special unit of the Philadelphia Police Department; and

b. She has the right to submit to the Police Commissioner, within thirty (30) days from the date of her receipt of such notification, requests to transfer to not more than three (3) non–sector patrol, special units of the Philadelphia Police Department.

10. The notice to be given by the City to incumbent female police officers as set forth in paragraph 9, *supra*, shall be in writing, be made by U.S. mail, first class and postage prepaid, be approved as to both substance and form by the United States prior to mailing, and be accompanied by a copy of this Order. Further, such notice shall be provided to each incumbent female police officer not then on layoff within ten (10) days from the date of entry of this Order and to each incumbent female police officer then on layoff within ten (10) days after her recall from layoff.

11. Nothing contained in paragraphs 8 through 10, *supra*, shall in any way extinguish or impair the right of any incumbent female officer to request transfer through existing procedures, and to be considered for transfer to any other district or non–sector patrol, special unit of the Philadelphia Police Department.

### IV

*PROMOTION RELIEF FOR INCUMBENT FEMALE POLICE OFFICERS TO THE RANKS OF DETECTIVE AND SERGEANT*

12. The City of Philadelphia shall fill through promotion the next sixteen (16) vacancies which hereafter occur in the rank of detective with female officers, selected in rank order from the eligibility list in use by the City at the time such vacancies are to be filled, provided that each such officer selected for promotion must have a "satisfactory" performance rating.

13. The City of Philadelphia shall fill through promotion the next seventeen (17) vacancies which hereafter occur in the rank of sergeant with female officers, selected in rank order from the eligibility list in use by the City at the time such vacancies are to be filled, provided that each such officer selected for promotion must have a "satisfactory" performance rating.

14. The promotion by the City of Officer Leslie Seymore to either the rank of detective or sergeant, at her choosing, pursuant to paragraph 20, *infra*, shall not count toward the City's compliance with the promotion relief required by this Part IV.

### V

*REMEDIAL RELIEF FOR INDIVIDUAL FEMALES*

15. In settlement of all of the claims of the United States for remedial relief on behalf of individual females alleged to have been the victims of a pattern or practice of discrimination against females with respect to job opportunities in the Philadelphia Police Department, as well as all of the claims of individual females who consent to and/or accept the relief provided under Part V of this Order, the City of Philadelphia shall:

a. Provide the sum of $700,000.00, to be used to satisfy the back pay awards to be paid to individuals under Part V of this Order (Attached hereto as Appendix A is an alphabetical listing of each individual entitled to receive a backpay award under Part V of this Order, as well as the amount of such back pay award).

b. Pay all employer contributions to the social security fund due on the back pay awards to be paid to individuals under Part V of this Order.

c. Provide each individual entitled to relief under Part V of this Order who either is an incumbent City employee, or pursuant to the provisions of this Order becomes a

City employee, with full and complete pension benefits as though such individual had been appointed on the remedial seniority date indicated for that individual in this Order and the City and such individual regularly, timely and fully had contributed to the pension fund on behalf of such individual from that date to the present. In order to fund such pension relief on behalf of each such individual who is a City employee, the City shall pay into the pension fund on her behalf a sufficient sum of money to satisfy fully and completely all employer contributions to such fund to date, and shall deduct from the face amount of the back pay award to which each such individual is entitled, and pay into the pension fund on her behalf, six percent (6%) in full and complete satisfaction of the employee's contributions to such fund to date. In no event, however, shall the City be required to pay into the pension fund on behalf of, or may the City deduct for pension contribution purposes any sum of money from a back pay award of, an individual entitled to relief under Part V of this Order if such individual continuously has been a City employee from at least the remedial seniority date indicated for that individual in this Order. In order to fund the pension relief on behalf of each individual who pursuant to the provisions of this Order becomes a City employee, the City shall, at the time of her appointment, pay into the pension fund on her behalf a sufficient sum of money to satisfy fully and completely all employer contributions to such fund to that date, and shall deduct from her first paycheck after appointment (or paychecks, if necessary), and pay into the pension fund on her behalf, a sum of money equal to six percent (6%) of the face amount of the back pay award to which she is entitled under Part V of this Order, in full and complete satisfaction of the employee's contributions to such fund to the date of appointment. No part of the employer contribution to be paid by the City into the pension fund on behalf of an individual shall be deducted from the face amount of the back pay award to which the individual is entitled.

d. Provide that non—monetary relief as is set forth in Part V of this Order.

A. *Relief For Those Incumbent Female Police Officers Who, Pursuant To The Interim Hiring Orders Of The Court, Should Have Been Appointed In Recruit Class 240 On April 27, 1977 Or Recruit Class 241 On July 6, 1977*

16. The United States has contended that, pursuant to the interim hiring orders of the Court, each of the following named twenty—four (24) incumbent female police officers should have been appointed on the date and in the recruit class indicated rather than on the later date she actually was appointed; and that had she been so appointed, she would not have been included in the City's February 29, 1980 layoff of police officers. By Stipulation between the United States and the City of Philadelphia and entered by the Court on March 14, 1980, the City agreed and stipulated that each of these twenty—four (24) incumbent female police officers should have been appointed on the date and in the recruit class indicated below. In that Stipulation, the City further agreed to recall immediately each of those female police officers, provide each of them with retroactive seniority, for all purposes, as of the date indicated and provide each of them with full back pay for the period of time that she was laid off in 1980. However, the issue of the amount of back pay, if any, to which each of these female police officers is entitled as a result of not having been appointed on the date indicated was not resolved by that Stipulation. It is agreed between the United States and the City of Philadelphia, and it is hereby ordered that, the City shall provide each of these female officers with that back pay award indicated below in settlement of the claim of the United States on her behalf and of her individual claim:

April 27, 1977 – Class 240

| Name | Back Pay Award |
| --- | --- |
| Strohm, Eileen M. | $ 146.93 |
| Masiejczyk, Deborah | 1,031.48 |
| Nedby, Joan M. | 146.93 |
| Kres, Susan | 2,115.74 |
| Ralph, Carole A. | 1,377.91 |
| Young, Theresa | 1,747.97 |
| Duff, Carol A. | 1,212.51 |
| Collins, Michelle | 1,054.58 |
| Geist, Carolyn | 2,018.30 |
| Farr, Harriett L. | 416.38 |

April 27, 1977 – Class 240

| Name | Back Pay Award |
| --- | --- |
| Matthews, Patsy | 416.38 |
| Schrandt, Julie | 2,018.30 |

July 6, 1977 – Class 241

| Name | Back Pay Award |
| --- | --- |
| O'Donnell, Ann C. | $1,061.22 |
| Malkowski, Roseann | 1,572.14 |
| Ferry, Mary Ellen | 1,457.70 |
| Giddings, Marjorie | 269.43 |
| Morgan, Andrea | 1,363.69 |
| Cianfrani, Maria | 2,453.87 |
| Rotolo, Maria G. | 630.59 |
| Higgins, Sharon | 2,762.44 |
| Tenant, Serena W. | 2,860.73 |
| Robinson, Corrine | 3,625.94 |
| Hedgpeth, Marilyn | 630.59 |
| Rapp, Beatrice M. | 1,778.96 |

17. In addition to those twenty–four (24) incumbent female officers identified in paragraph 16, *supra*, the United States and the City of Philadelphia stipulate and agree that, pursuant to the interim hiring orders of the Court, both of the following two named incumbent female police officers should have been appointed on the date and in the recruit class indicated. It is agreed between the United States and the City of Philadelphia, and it is hereby ordered that, the City shall provide each of these female police officers with that back pay award indicated below and retroactive seniority as a police officer, for all purposes, as of the date indicated below, in settlement of the claim of the United States on her behalf and of her individual claim:

April 27, 1977 – Class 240

| Name | Back Pay Award |
| --- | --- |
| Batezell, Patricia | $2,018.30 |

July 6, 1977 – Class 241

| Name | Back Pay Award |
| --- | --- |
| Jones, Edith | $ 385.88 |

B. *Relief For Those Incumbent Female Police Officers Who, Pursuant To The Interim Hiring Orders Of The Court, Should Have Been Appointed In Recruit Class 242 On July 13, 1977, Recruit Class 243 On August 22, 1977 Or Recruit Class 244 On October 24, 1977*

18. The United States has contended that, pursuant to the interim hiring orders of the Court, each of the following named twenty (20) incumbent female police officers should have been appointed on the date and in the recruit class indicated rather than on the later date she actually was appointed; and further that had each of the nineteen (19) incumbent female police officers whose names are preceded by an asterisk (*) been so appointed, she would not have been laid off by the City for a twenty (20) day period of time from August 14, 1978 to September 3, 1978. By Stipulation between the United States and the City of Philadelphia and entered by the Court on April 18, 1980, the City agreed and stipulated that each of these twenty (20) incumbent female police officers should have been appointed on the date and in the recruit class indicated. In that Stipulation, the City further agreed to provide each of them with retroactive seniority, for all purposes, as of the date indicated. However, the issue of the amount of back pay, if any, to which each of these female police officers is entitled as a result of not having been appointed on the date indicated was not resolved by that Stipulation. It is agreed between the United States and the City of Philadelphia, and it is hereby ordered that, the City shall provide each of these female officers with that back pay award indicated below in settlement of the claim of the United States on her behalf and of her individual claim:

July 13, 1977 – Recruit Class 242

| | Name | Back Pay Award |
| --- | --- | --- |
| | DiBlasi, Maria | $2,636.58 |
| * | Smith, Sarah | 6,290.55 |
| * | Hill, Virginia | 6,082.22 |
| * | Stevenson, Regina | 2,550.20 |
| * | Hughes, Ann | 6,290.55 |
| * | Laudenslager, Diane | 2,777.38 |
| * | Warner, Marion | 6,290.55 |
| * | Fowler, Edith | 9,472.25 |
| * | Pryor, Hazel | 6,290.55 |
| * | Hammett, Earlene | 8,406.76 |
| * | Stavrakis, Catherine | 8,454.50 |
| * | Farrell, Stephanie | 6,290.55 |

August 22, 1977 – Recruit Class 243

| | Name | Back Pay Award |
| --- | --- | --- |
| * | Degliomini, Donna | $3,095.15 |
| * | Carbonara, Jean | 3,095.15 |

### August 22, 1977 – Recruit Class 243

| | Name | Back Pay Award |
|---|---|---|
| * | Staulcup, Elsie | 4,850.54 |
| * | Miller, Barbara | 7,541.14 |
| * | Davis, Lucille | 1,931.17 |
| * | Shuford, Marjorie | 5,765.27 |
| * | Miller, Ruth | 7,675.39 |

### October 24, 1977 – Recruit Class 244

| | Name | Back Pay Award |
|---|---|---|
| * | Walton, Harlean | $1,411.65 |

#### C. *Leslie Seymore*

19. The United States has contended that Leslie Seymore, an incumbent female police officer in the Philadelphia Police Department who was appointed on May 5, 1975, should have been appointed in that position by the City of Philadelphia at least by May 1973. The United States also has contended that, pursuant to Paragraphs Five and Six of the March 5, 1976 Interim Consent Decree, Officer Seymore should have been given the opportunity to elect to have been promoted either:

a. To the rank of sergeant, with retroactive seniority in that rank for all purposes as of October 17, 1976, the day prior to the date the City promoted the first male to that rank who achieved a score on the 1975 written examination for sergeant administered to males which was lower than the score Officer Seymore would have achieved on the written examination administered to females had the content of such examination been comparable to that of the examination previously administered to the males, and back pay in that rank; or

b. To the rank of detective, with retroactive seniority in that rank for all purposes as of February 21, 1979, the day prior to the date the City promoted the first male to that rank who achieved a score on the 1974 written examination for detective administered to males which was lower than that score Officer Seymore would have achieved on the written examination administered to females had the content of such examination been comparable to that of the examination previously administered to the males, and back pay in that rank.

20. Without admitting to the contentions of the United States as set forth in paragraph 19, *supra,* and in settlement of the claim of the United States for relief on behalf of Officer Seymore and of her individual claim, the City of Philadelphia agrees, and it is hereby ordered, that the City shall:

a. Provide Officer Seymore with retroactive seniority in the rank of police officer, for all purposes, as of May 1, 1973;

b. Provide Officer Seymore with the sum of $18,514.13 in back pay to compensate her for the monetary loss she has incurred as a result of not having been appointed a police officer on May 1, 1973;

c. Provide Officer Seymore the opportunity to be promoted to the rank of either sergeant or detective, át her choosing; and if she elects to be promoted to either of those ranks, immediately to promote her and provide her with all of the emoluments of that rank;

d. If Officer Seymore elects to be promoted to sergeant, provide her with retroactive seniority in that rank, for all purposes, as of October 17, 1976, and the sum of $6,912.68 in back pay to compensate her for the monetary loss she has incurred as a result of not having been promoted to that rank on October 17, 1976; and

e. If Officer Seymore elects to be promoted to detective, provide her with retroactive seniority in that rank, for all purposes, as of February 21, 1979, and the sum of $647.74 in back pay to compensate her for the monetary loss she has incurred as a result of not having been promoted to that rank on February 21, 1979.

#### D. *Brenda Williams*

21. On April 5, 1975, Brenda Williams applied for the position of policeman in the Philadelphia Police Department; on May 31, 1975, she took and passed the written examination for policeman; and on May 20, 1976 and during the course of her processing for appointment by the City, she was rejected for appointment as a police officer solely because she had had a cervical carcinoma in late 1968.

22. The United States has contended that although Ms. Williams had had a cervical carcinoma in 1968, this condition was

treated successfully in 1968 and 1969 and that her rejection for appointment as a police officer by the City was unlawful.

23. On October 26, 1979, the Court entered a memorandum opinion and order in *Sanford et al. v. O'Neill*, in which the Court directed the City to appoint Ms. Williams as a police officer if she otherwise qualified for that position.

24. On December 17, 1979, Ms. Williams was appointed a police officer in the Philadelphia Police Department. However, on February 29, 1980, Officer Williams was laid off by the City.

25. By Stipulation between the United States and the City of Philadelphia and approved and entered by the Court on April 18, 1980, the City stipulated and agreed that: (a) based upon her rank on the eligibility list which resulted from the 1975 examination for policeman, Officer Williams would have been appointed a police officer on June 7, 1976 had she not been rejected because she had had a cervical carcinoma in 1968; and (b) had Officer Williams been appointed a police officer on June 7, 1976, she would not have been included in the City's February 29, 1980 layoff of police officers. In that Stipulation, the City further agreed to: recall Officer Williams from layoff; provide her with retroactive seniority, for all purposes, as of June 7, 1976; provide her with full back pay for the period of time that she was laid off in 1980; and hereafter provide her with all benefits, including disability benefits, to which all other police officers are entitled. However, the issue of the amount of back pay, if any, to which Officer Williams is entitled as a result of her rejection by the City for appointment as a police officer in 1976 was not resolved by that Stipulation.

26. Without admitting to the contentions of the United States as set forth in paragraph 22, *supra*, and in settlement of the claim of the United States for relief on behalf of Officer Williams and of her individual claim, the City of Philadelphia agrees, and it is hereby ordered, that the City shall provide Officer Williams with the sum of $7,482.58 in back pay to compensate her for the monetary loss she has incurred

as a result of not having been appointed a police officer on June 7, 1976.

E. *Frances Neiley*

27. The United States has contended that, pursuant to the interim hiring orders of the Court, Frances Neiley, an incumbent female police officer in the Philadelphia Police Department appointed on August 23, 1977, should have been appointed on April 27, 1977 and in Recruit Class 240. The United States also has contended that the City unlawfully refused to grant Officer Neiley's request to transfer to a limited duty assignment after she became pregnant and, instead, unlawfully placed her on unpaid maternity leave on March 20, 1979.

28. By Stipulation between the United States and the City of Philadelphia and entered by the Court on March 14, 1980, the City stipulated and agreed that Officer Neiley should have been appointed a police officer in the Philadelphia Police Department on April 27, 1977, and the City agreed to provide Officer Neiley with retroactive seniority, for all purposes, as of that date.

29. Without admitting to the other contentions of the United States as set forth in paragraph 27, *supra*, and in settlement of the claim of the United States for relief on behalf of Officer Neiley and of her individual claim, the City of Philadelphia further agrees, and it is hereby ordered, that the City shall:

a. Provide Officer Neiley with the sum of $9,497.79 in back pay to compensate her for the monetary loss she has incurred as a result of (1) not having been appointed as a police officer on April 27, 1977 and (2) having been denied a restricted duty assignment and placed on unpaid maternity leave from March 20, 1979 to September 1, 1979, during which time she would have been able to perform such assignment;

b. Reinstate that amount of vacation and sick leave Officer Neiley was required to take from February 14, 1979 (when her request for a restricted duty assignment was denied and she was continued on "no-duty" status) until March 20, 1979;

c. Reimburse Officer Neiley with that portion of the medical health insurance pre-

miums paid by her from June 1, 1979 through December 1, 1979 which would have been paid by the City had Officer Neiley not been placed on unpaid maternity leave; and

d. Immediately place Officer Neiley's name, in proper rank order, on the eligibility list which resulted from the written examination for promotion to the rank of sergeant which was administered on October 27, 1979, and hereafter consider her for promotion to sergeant based upon her rank on such eligibility list.

### F. Dorothy Thomas

30. The United States has contended that the City of Philadelphia unlawfully has denied the requests of Dorothy Thomas, an incumbent female police officer in the Philadelphia Police Department, to transfer as a police officer to various non–sector patrol, special units of the Police Department.

31. The City of Philadelphia has contended that the Police Department has denied these transfer requests of Officer Thomas because of her disciplinary record as a police officer.

32. Without admitting to the contentions of the United States as set forth in paragraph 30, supra, and in settlement of the claim of the United States for relief on behalf of Officer Thomas and of her individual claim, the City of Philadelphia agrees, and it is hereby ordered, that:

a. The City shall immediately expunge from Officer Thomas' personnel and service files and shall not in the future consider each disciplinary action, whether pending or completed, taken by the Police Department against her, the disposition of each such action and all documents, records and other memoranda with respect thereto, except for the neglect of duty charge of March 20, 1978, for which Officer Thomas was found guilty; and

b. Henceforth, Officer Thomas has the right to request transfer, and be considered for transfer, to any district or special unit of the Police Department on an equal basis with all other police officers.

### G. Relief For Those Female Applicants For The Position Of Policeman Who Were Rejected From Consideration For Hire Because They Did Not Meet The City's Minimum Height Requirement Of 5'3½" For Females

33. The Court, in its memorandum opinion entered February 14, 1979, concluded (at pp. 13–15) that the City's minimum height requirement of 5'3½" for female applicants for the position of police officer, and previously for the position of policeman, was unlawful.

34. The following chart reflects the names of eight (8) females who applied for the position of policeman in the Philadelphia Police Department in 1975 who were less than 5'3½" in height, and for each of them: (a) the date of her application; (b) the score she achieved on the written examination administered by the City for that position; (c) her height; (d) the date she was rejected for appointment solely because her height was under the City's minimum height requirement of 5'3½" for females; and (e) based upon her rank on the eligibility list which resulted from the 1975 examination for policeman, the date she would have been appointed a police officer had she not been rejected on the basis of her height:

| Name | Date of Application | Exam Score | Height | Date of Rejection | Date Would Have Been Appointed |
|---|---|---|---|---|---|
| Simon, Clare | 4/7/75 | 92 | 5'1 ½" | 3/27/76 | 5/24/76 |
| Gramlich, Helen | 4/4/75 | 92 | 5'3" | 3/30/76 | 5/24/76 |
| Scheier, Alexis | 4/21/75 | 95 | 5'2 ½" | 3/25/76 | 5/17/76 |
| Morris, Kathleen | 4/7/75 | 93 | 5'3 ¼" | 4/9/76 | 5/24/76 |
| Cuculino, Marie | 4/8/75 | 90 | 5'3" | 5/10/76 | 6/7/76 |
| Workman, Moira | 4/14/75 | 90 | 5'2 ¾" | 5/18/76 | 6/7/76 |
| Dougherty, Barbara | 4/7/75 | 88 | 5'1 ¾" | 5/26/76 | 4/27/77 |
| Martin, Rozella | 4/12/75 | 88 | 5'2 ¼" | 5/26/76 | 4/27/77 |

35. On March 14, 1978, Clare Simon re-applied for the position of police officer in the Philadelphia Police Department, and on December 3, 1979 she was appointed a police officer. On February 7, 1978, Helen Gramlich reapplied for the position of police officer, and on November 19, 1979 she was appointed a police officer. Officers Simon and Gramlich were laid off by the City on February 29, 1980.

36. The United States has contended that had Officers Simon and Gramlich previously not been rejected on the basis of their height, they both would have been appointed on May 24, 1976; and that had they been so appointed, they would not have been included in the City's February 29, 1980 layoff of police officers.

37. By Stipulation between the United States and the City of Philadelphia and entered by the Court on April 18, 1980, the City agreed and stipulated that Officers Simon and Gramlich would have been appointed on May 24, 1976 had they not been rejected on the basis of height. In that Stipulation, the City further agreed immediately to recall Officers Simon and Gramlich from layoff, provide each of them with retroactive seniority, for all purposes, as of May 24, 1976, and provide each of them with full back pay for the period of time that she was laid off in 1980. However, the issue of the amount of back pay, if any, to which each of them is entitled as a result of her rejection by the City for appointment as a police officer in 1976 was not resolved by that Stipulation. The United States and the City of Philadelphia agree, and it is hereby ordered, that the City shall provide Officer Gramlich with the sum of $11,998.13 in settlement of the claim of the United States on her behalf and of her individual claim. The relief to which Officer Simon is entitled under this Order is set forth in paragraph 64, *infra*.

38. None of the other six (6) rejected female applicants whose names are set forth in paragraph 34, *supra*, reapplied for appointment subsequent to her 1976 rejection by the City for failing to meet the City's minimum height requirement of 5'3½" then in effect. In settlement of the claim of the United States on behalf of these six (6) females and of their individual claims, the City of Philadelphia agrees, and it is hereby ordered, that the City shall provide each of them with the following relief:

a. The City shall offer each of these six (6) females the opportunity to be appointed in the first recruit class hereafter commenced by the Philadelphia Police Department at its Training Academy, provided that she passes a physical examination and a background investigation administered to the other applicants for appointment at that time. In this regard, however, the City shall not require any of these six (6) females to meet its maximum age requirement as a condition of appointment.

b. The City's offer of appointment to each of these six (6) females shall be made in writing; approved as to both substance and form by the United States, accompanied by a copy of this Order and forwarded by U.S. mail, first class and postage prepaid, not less than ninety (90) days prior to the commencement of the next recruit class. Each of these six (6) females shall have twenty-one (21) days from receipt of the City's offer of appointment to advise the City as to whether she will accept such offer. If she advises the City within twenty-one (21) days of her receipt of the City's offer of her desire to be appointed, the City shall immediately process her for appointment and, if she passes the physical examination and background investigation, the City shall appoint her a police officer. If, however, she either does not accept such offer of appointment or, absent good cause, does not advise the City as to whether she will accept such offer of appointment within twenty-one (21) days from her receipt of the City's offer, the City is released from its obligations to her under this subparagraph 38b, and subparagraph 38c, *infra*.

c. The City further shall provide each of these six (6) females who successfully completes all phases of instruction at the Training Academy with all of the emoluments of

the rank of police officer, including retroactive seniority, for all purposes, in that rank as of the date indicated below:

| Name | Retroactive Seniority Date |
| --- | --- |
| Scheier, Alexis | May 17, 1976 |
| Morris, Kathleen | May 24, 1976 |
| Cuculino, Marie | June 7, 1976 |
| Workman, Moira | June 7, 1976 |
| Dougherty, Barbara | April 27, 1977 |
| Martin, Rozella | April 27, 1977 |

d. Lastly, the City shall provide each of these six (6) females with that back pay award indicated below to compensate her for the monetary loss she has incurred as a result of her earlier rejection for appointment by the City as a police officer because of her height:

| Name | Back Pay Award |
| --- | --- |
| Scheier, Alexis | $13,307.54 |
| Morris, Kathleen | 13,474.25 |
| Cuculino, Marie | 11,998.13 |
| Workman, Moira | 14,308.58 |
| Dougherty, Barbara | 12,561.85 |
| Martin, Rozella | 6,338.42 |

None of these six (6) females is required to indicate a present interest in or to accept an offer of appointment as a condition of her receipt of the back pay award to which she is entitled under this subparagraph 38d.

H. *Relief For Those Former Female Police Officer Recruits Who Were Discharged By The Police Department On The Ground That They Failed To Pass The Firearms Qualifying Test Administered To Them While At The Police Department's Training Academy*

39. The United States has contended that, pursuant to the interim hiring orders of the Court, the following four (4) named former female police officer recruits in the Philadelphia Police Department should have been appointed on the date and in the recruit class indicated:

July 13, 1977–Class 242

Pritchard, Mari
Sanford, Lucy
Waters, Rose

August 22, 1977–Class 243

Black, Shirley

40. Each of these four (4) former police officer recruits was discharged by the Phil-adelphia Police Department on March 31, 1978 on the ground that she failed to achieve a passing score on the firearms qualifying test administered to her while at the Police Department's Training Academy. The United States has contended that the Police Department's discharge of each of them was unlawful.

41. By Stipulation between the United States and the City of Philadelphia and entered by the Court on April 18, 1980, the City stipulated and agreed that, pursuant to the interim hiring orders of the Court, each of these four (4) former police officer recruits should have been appointed on the date and in the recruit class set forth in paragraph 39, *supra*.

42. Without admitting to those contentions as set forth in paragraph 40, *supra*, and in settlement of the claims of the United States for relief on behalf of these four (4) former female police officer recruits, the City of Philadelphia agrees, and it is hereby ordered, that the City shall provide each of them with the following relief:

a. The City shall offer each of these four (4) females the opportunity to be appointed in the first recruit class hereafter commenced by the Philadelphia Police Department at its Training Academy, provided that she passes a physical examination and a background investigation administered to the other applicants for appointment at that time. In this regard, however, the City shall not require any of these four (4) females to meet its minimum age requirement as a condition of appointment.

b. The City's offer of appointment to each of these four (4) females shall be in writing, approved as to both substance and form by the United States, accompanied by a copy of this Order and forwarded by U.S. mail, first class and postage prepaid, not less than ninety (90) days prior to the commencement of the next recruit class. Each of these four (4) females shall have twenty–one (21) days from receipt of the City's offer of appointment to advise the City as to whether she will accept such offer. If she advises the City within twenty–one (21) days of her receipt of the City's offer of her desire to be appointed, the City shall imme-

diately process her for appointment and, if she passes the physical examination and background investigation, the City shall appoint her a police officer. If, however, she either does not accept such offer of appointment or, and absent good cause, does not advise the City as to whether she will accept such offer of appointment within twenty–one (21) days from her receipt of the City's offer, the City is released from its obligations to her under this subparagraph 42b, and subparagraph 42c, *infra*.

c. The City further shall provide each of these four (4) females who successfully completes all phases of instruction at the Training Academy with all of the emoluments of the rank of police officer, including retroactive seniority, for all purposes, in that rank as of the date set forth in paragraph 39, *supra*.

d. Lastly, the City shall provide each of these four (4) females with that back pay award indicated below to compensate her for the monetary loss she has incurred as a result of her discharge by the City while a police officer recruit:

| Name | Back Pay Award |
|---|---|
| Pritchard, Mari | $ 5,808.42 |
| Sanford, Lucy | 10,632.73 |
| Waters, Rose | 7,567.86 |
| Black, Shirley | 6,262.43 |

None of these four (4) females is required to indicate a present interest in or to accept an offer of appointment as a condition of her receipt of the back pay award to which she is entitled under this subparagraph 42d.

I. *Patricia Sullivan, Carolyn Carter and Ernestine McCullough*

43. On May 31, 1975, Patricia Sullivan, Carolyn Carter and Ernestine McCullough each took and passed the written examination for policeman administered by the City of Philadelphia.

44. On July 6, 1977, Ms. Sullivan was appointed a police officer in the Philadelphia Police Department and commenced training at the Department's Training Academy. On September 1, 1977, and despite the fact that she had successfully completed all phases of the Training Academy curriculum administered to her as of that date, Officer Sullivan was discharged from the Police Department on the ground that she was overweight.

45. In September 1977 and during the course of their processing for appointment by the City, Ms. Carter and Ms. McCullough each was rejected for appointment as a police officer on the ground that she was overweight.

46. On April 10, 1978, a complaint was filed in *Sanford, et al. v. O'Neill, et al., supra*, alleging, *inter alia*, that the City's discharge of Officer Sullivan from the Police Department and its rejection for appointment of Ms. Carter and Ms. McCullough was unlawful. The *Sanford* action was consolidated with the *United States* and *Brace* actions by the Court on February 27, 1979.

47. Thereafter, on May 17, 1979, this Court entered a memorandum opinion in the *Sanford* action in which the Court concluded, *inter alia*, that the City's discharge of Officer Sullivan and its rejection for appointment of Ms. Carter and Ms. McCullough was not unlawful; and in an order which accompanied its memorandum opinion the Court granted judgment for the City.

48. On March 6, 1980, the Court of Appeals issued a decision in the *Sanford* action, 616 F.2d 92 (C.A.3, 1980), vacating this Court's May 17, 1979 order and remanding the action to this Court for further proceedings.

49. Without admitting to the contentions set forth in paragraph 46, *supra*, and in settlement of the claims for relief of Patricia Sullivan, Carolyn Carter and Ernestine McCullough, the City of Philadelphia agrees, and it is hereby ordered, that:

a. The City shall offer each of these three (3) females the opportunity to be appointed in the first recruit class hereafter commenced by the Philadelphia Police Department at its Training Academy, provided that she passes a physical examination and a background investigation administered to the other applicants for appointment at that time. In this regard, however, the City shall not require any of these three

(3) females to meet its maximum age requirement as a condition of appointment.

b. The City's offer of appointment to each of these three (3) females shall be made in writing, approved as to both substance and form by their counsel, accompanied by a copy of this Order and forwarded by U.S. mail, first class and postage prepaid, not less than ninety (90) days prior to the commencement of her processing for appointment in the next recruit class. Each of these three (3) females shall have sixty (60) days from receipt of the City's offer of appointment to advise the City as to whether she will accept such offer. If she advises the City within sixty (60) days of her receipt of the City's offer of her desire to be appointed, the City shall process her for appointment and, if she passes the physical examination and background investigation, the City shall appoint her a police officer in the first recruit class hereafter commenced. If, however, she either does not accept such offer of appointment or, and absent good cause, does not advise the City as to whether she will accept such offer of appointment within sixty (60) days from her receipt of the City's offer, the City is released from its obligations to her under this subparagraph 49b, and 49c, *infra.*

c. Further, if she successfully completes all phases of instruction at the Training Academy, the City shall provide Officer Sullivan with all of the emoluments of the rank of police officer, including retroactive seniority for all purposes in that rank as of July 6, 1977.

d. Lastly, the City shall provide each of these three (3) females with that back pay award indicated below to compensate her for the monetary loss she has incurred as a result of her discharge from the Police Department, in the case of Officer Sullivan, or her rejection for appointment, in the case of both Ms. Carter and Ms. McCullough:

| Name | Back Pay Award |
| --- | --- |
| Sullivan, Patricia | $1,000.00 |
| Carter, Carolyn | 500.00 |
| McCullough, Ernestine | 500.00 |

None of these three (3) females is required to indicate a present interest in or to accept an offer of appointment as a condition of her receipt of the back pay award to which she is entitled under this subparagraph 49d.

### J. *Penelope Brace*

50. Penelope Brace, an incumbent female detective in the Philadelphia Police Department, was appointed a policewoman on April 19, 1965. While employed as a policewoman, Detective Brace filed charges of discrimination against the Philadelphia Police Department with the Equal Employment Opportunity Commission ("EEOC") and the Law Enforcement Assistance Administration of the Department of Justice on July 18 and July 30, 1973, respectively. On July 25, 1973, one week after she filed her charge of sex discrimination with the EEOC, Detective Brace was transferred from her assignment at Juvenile Aid Division ("JAD") Headquarters to a sector patrol assignment, and was intermittently placed under surveillance. On November 27, 1973, a statement of charges was filed against Detective Brace; and, after a hearing before the Police Board of Inquiry, she was formally dismissed from the Philadelphia Police Department on February 25, 1974. Detective Brace appealed her dismissal to the Philadelphia Civil Service Commission and, on May 16, 1974, the Commission ordered her reinstated.

51. The United States has contended that the City of Philadelphia's discharge of Detective Brace in 1974 was in retaliation for her having filed charges of sex discrimination against the Police Department with the EEOC and the LEAA and, thus, was unlawful.

52. On May 4, 1974, Detective Brace applied to take a written examination for promotion to the rank of detective, but her application was rejected on the ground that she was a policewoman and, thus, lacked "policeman" experience.

53. Pursuant to the transfer provisions of the Interim Consent Order entered March 5, 1976, Detective Brace transferred to the police officer line of progression on December 13, 1976.

54. Pursuant to the promotion provisions of the Interim Consent Order entered March 5, 1976, the City administered to Detective Brace a written examination for promotion to the rank of detective; and, on March 17, 1978, the City certified the score Detective Brace had achieved on that examination as being higher than that of the lowest–scoring male promoted to the rank of detective.

55. In a memorandum opinion entered July 3, 1978, the Court concluded that the promotion provisions of the March 5, 1976 Interim Consent Order required that Detective Brace be promoted; and, in an accompanying order, the Court directed the City to promote her to detective. Pursuant to this order, the City promoted Detective Brace to that rank on September 13, 1978.

56. The United States has contended that in addition to the promotion she already has received, Detective Brace is entitled, pursuant to Paragraph Six of the Interim Consent Order, to: (a) retroactive seniority in the rank of detective, for all purposes, as of September 12, 1976, one day prior to the date the City promoted the first male to that rank who achieved a score on the 1974 written examination for detective which was lower than the score Detective Brace achieved on the make–up examination she took for promotion to that rank; and (b) an award of back pay to compensate her for the monetary loss she has incurred as a result of having been denied promotion to the rank of detective on September 12, 1976.

57. The City of Philadelphia already has provided Detective Brace with the sum of $11,408.43 in back pay for the monetary loss she incurred as a result of having been discharged by the City on February 25, 1974 and having been denied promotion to the rank of detective on September 12, 1976.

58. Without admitting to the contentions of the United States as set forth in paragraphs 51 and 56, *supra,* and in settlement of the claim of the United States on behalf of Detective Brace, the City of Philadelphia agrees, and it is hereby ordered, that the City shall:

a. Provide Detective Brace with retroactive seniority in the rank of detective, for all purposes, as of September 12, 1976, and provide her with all of the emoluments of that rank; and

b. Provide Detective Brace with the additional sum of $3,465.20 in back pay to compensate her for the monetary loss she has incurred as a result of having been discharged by the Philadelphia Police Department on February 25, 1974, and having been denied promotion to the rank of detective on September 12, 1976.

K. *Relief For Those Incumbent Female Police Officers Who Were Interested In Being Appointed To The Position Of Either Policeman Or Police Officer At An Earlier Date But Who Did Not Apply For That Position Because They Believed It Would Have Been Futile*

59. Since the effective date of Title VII's coverage upon the City of Philadelphia (March 24, 1972), the City has posted job announcements and administered written examinations on three occasions for the position of policeman (prior to March 5, 1976) and the position of police officer (since March 5, 1976):

a. On September 20, 1972, the City issued an employment announcement for the position of policeman which stated that the next entry level "policeman" examination was open only to males. Thereafter, on October 14, 1972, the City administered a written examination for the position of policeman.

b. On March 31, 1975, the City issued an employment announcement for the position of policeman which stated that both males and females could apply for the position and that males had to be a minimum of 5'5½" and females a minimum of 5'3½". Thereafter, on May 31, 1975, the City administered a written examination for the position of policeman.

c. On January 30, 1978, the City issued an employment announcement for the position of police officer which stated that both males and females could apply for the posi-

tion and that males had to be a minimum of 5'5½" and females a minimum of 5'3½". Thereafter, on June 24, 1978, the City administered a written examination for the position of police officer.

60. On February 14, 1979, the Court entered its decision on the merits with respect to the City's BFOQ defense and its minimum height requirement of 5'3½" for females for the position of police officer and, previously, policeman. The Court concluded that the City had failed to demonstrate either that maleness is a BFOQ for the job of police officer or that its minimum height requirement of 5'3½" for female applicants for the position of police officer is a valid predictor of successful performance in that position. In the order which accompanied its decision, the Court directed that the City eliminate its minimum height requirement of 5'3½" for female officers and refrain from adopting any minimum height requirement unless it is first shown to be a valid predictor of successful job performance. The Court also enjoined the City from engaging in any act or practice with respect to recruitment, hiring, assignment, discipline, retention or promotion of police officers in the Philadelphia Police Department which has the purpose or the effect of discriminating on the basis of sex.

61. The United States has contended that the City's policy of excluding females from the position of policeman, as well as its use of a minimum height requirement for the position of police officer, and previously for the position of policeman, have had the effect of unlawfully deterring females who were interested in being appointed in either of these positions but who did not apply because they thought it would have been futile. The United States has contended that each of those females is to be presumed entitled to job offer, remedial seniority and back pay relief who can demonstrate either:

a. That she would have applied to take the October 14, 1972 examination for policeman, the May 31, 1975 examination for policeman or the June 14, 1978 examination for police officer but for the facts that (1) she was under the minimum height requirement for that position, (2) she had knowledge that the City had a minimum height requirement, and (3) she therefore believed it would have been futile to apply; or

b. That she would have applied to take the October 14, 1972 examination for policeman but for the fact that she had knowledge that the position of policeman was open only to males; or

c. That she would have applied to take the May 31, 1975 examination for policeman but for the fact that she received information upon which she reasonably believed that the position of policeman remained open only to males.

62. The United States has identified thirty–two (32) incumbent female police officers in the Philadelphia Police Department who it contends, although interested in appointment, did not apply prior to the date they actually did apply because they thought it would have been futile. The name and date of appointment of each of these thirty–two (32) incumbent female police officers, as well as the date of the written examination she would have applied to take and the date the United States contends she would have been eligible for appointment had she applied are as follows:

| Name | Date of Appointment | Date of Written Examination She Would Have Applied To Take | Date She Would Have Been Eligible for Appointment Had She Applied |
| --- | --- | --- | --- |
| Kelly, Donna | 5/17/76 | 10/14/72 | 6/18/73 |
| DeMay, Marie | 5/17/76 | 10/14/72 | 6/18/73 |
| Bachowsky, Barbara | 5/17/76 | 10/14/72 | 6/18/73 |
| Murawski, Kathleen | 5/17/76 | 10/14/72 | 6/18/73 |
| Pickersgill, Mary Joyce | 5/17/76 | 10/14/72 | 6/18/73 |
| Warren, Martha | 5/17/76 | 10/14/72 | 6/18/73 |

| Name | Date of Appointment | Date of Written Examination She Would Have Applied To Take | Date She Would Have Been Eligible for Appointment Had She Applied |
|---|---|---|---|
| Eldridge, Frances | 5/17/76 | 10/14/72 | 6/18/73 |
| Jones, Lois | 5/24/76 | 10/14/72 | 6/18/73 |
| Terry, Shirley | 5/17/76 | 10/14/72 | 6/18/73 |
| Merschen, Mary Jo | 5/17/76 | 10/14/72 | 6/18/73 |
| Flaherty, Philomena | 5/31/76 | 10/14/72 | 11/19/73 |
| Dorrah, Margaret | 8/8/76 | 10/14/72 | 11/19/73 |
| Rush, Maureen | 5/24/76 | 10/14/72 | 11/19/73 |
| Vasaturo, Anne | 7/6/77 | 10/14/72 | 11/19/73 . |
| O'Drain, Lilian | 6/7/76 | 10/14/72 | 11/19/73 |
| Topa, Leoda | 6/7/76 | 10/14/72 | 11/19/73 |
| Hurst, Constance | 4/27/77 | 10/14/72 | 12/3/73 |
| Simon, Clare | 12/3/79 | 10/14/72 | 12/3/73 |
| Conn, Debra | 8/22/77 | 10/14/72 | 12/3/73 |
| Robinson, Jean | 12/3/79 | 10/14/72 | 12/3/73 |
| Cuddhy, Barbara | 2/27/78 | 10/14/72 | 12/3/73 |
| Donahue, Diane | 8/22/77 | 10/14/72 | 12/3/73 |
| Sieradzki, Anna | 8/22/77 | 10/14/72 | 12/3/73 |
| Cohen, Jennita | 2/27/78 | 10/14/72 | 12/3/73 |
| Green, Rhona | 12/17/79 | 10/14/72 | 2/19/74 |
| Green, Karen | 10/24/77 | 10/14/72 | 2/19/74 |
| Sinese, Lois | 10/24/77 | 10/14/72 | 2/19/74 |
| Woodward, Lorraine | 10/24/77 | 10/14/72 | 8/5/74 |
| Lynch, Jessica | 10/24/77 | 10/14/72 | 8/5/74 |
| Thomas, Loretta | 11/19/79 | 5/31/75 | 5/17/76 |
| Felder, Ruth | 11/19/79 | 5/31/75 | 5/24/76 |
| Chinn, Carolyn | 12/3/79 | 5/31/75 | 7/6/77 |

63. Shirley Terry, one of the incumbent female police officers identified in paragraph 62, *supra*, was discharged by the Philadelphia Police Department on August 13, 1976 because she was pregnant. On February 27, 1978, the Court of Appeals issued its decision in *United States v. City of Philadelphia*, 573 F.2d 802 (C.A.3), *cert. denied*, 439 U.S. 830, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978), in which it ruled, *inter alia*, that the City's discharge of Officer Terry was unlawful and it directed that she be reinstated. By order entered May 17, 1979, this Court ordered the City to reinstate Officer Terry as a police officer and to provide her with retroactive seniority in that rank for all purposes as of May 17, 1976. On July 30, 1979, the City reinstated Officer Terry as a police officer and provided her with retroactive seniority in that rank for all purposes. Thereafter, on or about November 18, 1979, the City provided Officer Terry with the sum of $13,491.07 in back pay for the monetary loss she incurred as a result of her discharge by the City in 1976. That sum of $13,491.07 did not include any interest on the principal amount of back pay. The United States has contended that Officer Terry also is entitled to six percent (6%) interest compounded annually on the principal amount of back pay.

64. Without admitting to the contentions of the United States as set forth in paragraphs 61–63, *supra*, and in settlement of the claims of the United States for relief on behalf of those thirty–two (32) incumbent female officers whose names are set forth in paragraphs 62 and 63, *supra*, and of their individual claims, the City of Philadelphia agrees, and it is hereby ordered, that the City shall provide each of those female officers with retroactive seniority in the position of police officer for all purposes as of the date indicated below, immediate recall and assignment to one of the Police Department's districts or units as a police officer if she now is on layoff, and the back

pay award indicated below to compensate her for the monetary loss she has incurred. The back pay award of $6,605.33 to which Officer Terry is entitled includes the sum of $1,913.31 in interest on the principal amount of back pay already provided her for the monetary loss she incurred as a result of her discharge by the City in 1976.

| Name | Remedial Seniority Date | Back Pay Award |
|---|---|---|
| Kelly, Donna | 6/18/73 | $ 5,274.93 |
| DeMay, Marie | 6/18/73 | 5,927.20 |
| Bachowsky, Barbara | 6/18/73 | 662.36 |
| Murawski, Kathleen | 6/18/73 | 5,274.93 |
| Pickersgill, Mary Joyce | 6/18/73 | 9,197.56 |
| Warren, Martha | 6/18/73 | 5,274.93 |
| Eldridge, Frances | 6/18/73 | 3,664.05 |
| Jones, Lois | 6/18/73 | 586.71 |
| Terry, Shirley | 6/18/73 | 6,605.33 |
| Merschen, Mary Jo | 6/18/73 | 7,582.01 |
| Flaherty, Philomena | 11/19/73 | 8,448.83 |
| Dorrah, Margaret | 11/19/73 | 10,437.80 |
| Rush, Maureen | 11/19/73 | 8,578.46 |
| Vasaturo, Anne | 11/19/73 | 14,497.81 |
| O'Drain, Lilian | 11/19/73 | 7,388.49 |
| Topa, Leoda | 11/19/73 | 4,272.85 |
| Hurst, Constance | 12/3/73 | 1,222.76 |
| Simon, Clare | 12/3/73 | 22,488.69 |
| Conn, Debra | 12/3/73 | 17,424.26 |
| Robinson, Jean | 12/3/73 | 3,889.88 |
| Cuddhy, Barbara | 12/3/73 | 12,049.74 |
| Donahue, Diane | 12/3/73 | 14,737.00 |
| Sieradzki, Anna | 12/3/73 | 12,049.74 |
| Cohen, Jennita | 12/3/73 | 13,759.59 |
| Green, Rhona | 2/19/74 | 8,921.51 |
| Green, Karen | 2/19/74 | 5,510.31 |
| Sinese, Lois | 2/19/74 | 5,510.31 |
| Woodward, Lorraine | 8/5/74 | 4,723.11 |
| Lynch, Jessica | 8/5/74 | 4,723.11 |
| Thomas, Loretta | 5/17/76 | 2,591.24 |
| Felder, Ruth | 5/24/76 | 2,591.24 |
| Chinn, Carolyn | 7/6/77 | 8,229.55 |

L. *Relief For Those Females Who Were Interested In Being Appointed To The Position Of Either Policeman Or Police Officer But Who Did Not Apply For That Position Because They Believed It Would Have Been Futile*

65. Without admitting to the contentions of the United States as set forth in paragraph 61, *supra,* and in settlement of the claims of the United States for relief on behalf of other females, as yet unidentified, who the United States contends may have been interested in being appointed to the position of either policeman or police officer after the effective date of Title VII's cover-age upon the City but who did not apply for that position because they believed it would have been futile, the City of Philadelphia agrees, and it is hereby ordered, that:

a. The City shall, within thirty (30) days from the date of entry of this Order, publicize a notice stating that:

(1) This Court has found unlawful the City's prior exclusion of females from the position of policeman, as well as the City's minimum height requirement for policeman and for police officer; and

(2) Each responding female shall be eligible for further consideration for appointment as a police officer if she can demonstrate that she was interested in being appointed a policeman or a police officer; and either:

(a) That she would have applied to take the October 14, 1972 examination for policeman, the May 31, 1975 examination for policeman or the June 14, 1978 examination for police officer but for the facts that (i) she was under the stated height requirement for that position, (ii) she had knowledge that the City had a minimum height requirement for that position, and (iii) she therefore believed it would have been futile to apply; or

(b) That she would have applied to take the October 14, 1972 examination for policeman but for the fact that she had knowledge that the position of policeman was open only to males; or

(c) That she would have applied to take the May 31, 1975 examination for policeman but for the fact that she received information upon which she reasonably believed that the position of policeman remained open only to males.

(3) Those females who believe that they can make such a demonstration shall have twenty–one (21) days from the date of the last publication of such notice within which to contact the United States by writing to the following person:

Cathy S. Surace
Trial Attorney
Federal Enforcement Section
Civil Rights Division
Department of Justice
Washington, D.C. 20530

b. Such notice shall be publicized by the City for at least five (5) consecutive days (including a Sunday) in at least two (2) daily newspapers having widespread circulation throughout the City of Philadelphia. The content, size, format and location within the newspapers of such notices shall be agreed upon by the United States and the City or, failing such agreement, determined by the Court.

c. The United States shall, within ninety (90) days from the date of publication by the City of the last notification as set forth in subparagraph 65b, *supra*, provide the City with a list of each of those females who it believes has a valid futility claim and thus is entitled to relief under this paragraph 65. Thereafter, the United States and the City shall have ninety (90) days within which to seek to agree as to the relief, if any, to be provided to each of these females. If after such ninety (90) day period the United States and the City are unable to agree upon the relief to which any of these females is entitled, the United States may submit that issue to the Court for resolution.

d. The City shall provide the sum of $150,000.00 in settlement of all claims by the United States for back pay relief on behalf of females who the United States and the City agree, or absent such agreement the Court determines, are entitled to relief under this paragraph 65. No one female who the United States and the City agree, or absent such agreement the Court determines, is entitled to relief under this paragraph 65 shall receive a back pay award hereunder of more than $7,500.00.

## VI

### *IMPLEMENTATION OF INDIVIDUAL RELIEF*

66. Any individual entitled to relief under Part V of this Order, in order to obtain such relief, must sign a notarized release which will be provided her by the City in accordance with paragraph 67, *infra*, and return such notarized release to the City within thirty (30) days of her receipt thereof. Any individual female entitled to relief under Part V, *supra*, who either does not sign such a notarized release or, alternatively, and absent good cause, does not return a signed notarized release to the City within thirty (30) days of her receipt thereof shall be deemed to have waived her entitlement to such relief. Such release shall provide that she accepts that relief to which she is entitled under Part V, *supra*, in full and final settlement of any and all claims against the City of Philadelphia, its officials, officers or employees, based upon sex discrimination with respect to job opportunities in the Philadelphia Police Department in violation of any Federal, state or local equal employment opportunity laws, statutes, regulations or ordinances, occurring prior to the date such release is signed. Such release shall be in the form exemplified by Appendix B attached hereto or such other form upon which the United States and the City may agree.

67. Within ten (10) days from the date of entry of this Order, the City of Philadelphia shall notify each of those females who has been individually identified as being entitled to relief under Part V, *supra*, as to the specific relief to which she is entitled. With respect to those females who have not been individually identified as being entitled to relief under Part V, *supra*, but who either the United States and the City hereafter agree, or absent such agreement the Court determines, are entitled to relief under paragraph 65 of Part V, *supra*, the City shall notify each of them as to the specific relief to which either the United States and the City have agreed, or absent such agreement the Court has determined, she is entitled under paragraph 65, *supra*, within ten (10) days of such agreement or determination as the case may be.

68. The notification referred to in paragraph 67, *supra*, shall be in writing, be made by U.S. mail, first class and postage prepaid, be approved as to both substance and form by the United States prior to

mailing and be accompanied by a copy of this Order as well as a release form as described in paragraph 66, *supra*. In addition to advising each female recipient as to the specific relief to which she is entitled under Part V, *supra*, such notification shall clearly advise her as to the requirements of paragraph 66, *supra*, which must be met in order to obtain such relief. Such notification also shall state that if the recipient has any questions, she may contact either of the following counsel for the United States or the City:

Cathy S. Surace

Trial Attorney

Federal Enforcement Section

Civil Rights Division

Department of Justice

Washington, D.C. 20530

John M. Myers

Deputy City Solicitor

City of Philadelphia

Municipal Services Building

Fifteenth Floor

Philadelphia, Pennsylvania 19107

69. The City shall provide each female with the relief to which she is entitled under Part V, *supra*, immediately upon its receipt of her signed notarized release in accordance with paragraph 66, *supra*.

## VII

### RECORDS PRODUCTION AND REPORTING

70. The City of Philadelphia shall file with the Court and serve upon the United States, within twenty (20) days after every three-month period of time following the entry of this Order, a report which includes:

a. A computer printout or other listing setting forth, by unit, the full name, sex, rank, date of appointment, assignment and date assignment was made of each sworn officer in the Philadelphia Police Department as of the end of that three-month period;

b. A detailed statement setting forth the efforts, if any, undertaken by the City to recruit female applicants for the position of police officer during that period; the total amount of monies expended by the City on its total recruitment effort for applicants for the position of police officer during that period; and the total amount of monies expended by the City on its recruitment effort for female applicants for that position during that period;

c. The total number of persons who applied for the position of police officer during that three-month period, with a numerical breakdown by sex; the total number of persons who took, passed and failed, respectively, any written examination for the position of police officer administered by the City during that period; and a copy (within ten (10) days of its establishment) of any eligibility list which results therefrom, setting forth the test score and rank of each person who passed that examination;

d. The full name, sex and date of appointment of each person hired as a police officer in the Philadelphia Police Department during that three month period; and, within ten (10) days after each such officer receives his or her first assignment, the unit or district to which each is assigned;

e. The full name, sex and rank of each officer who was transferred, regardless of whether from uniform to plainclothes, plainclothes to uniform, or routine, during that three-month period, the transferee's former district or unit and assignment; the date of transfer; whether the transfer was voluntary or involuntary; and a copy of each application for transfer submitted to the Philadelphia Police Department during that three-month period; and

f. The full name, sex and rank of each officer who was promoted during that three-month period, as well as such officer's former and new rank and date of promotion.

## VIII

### COSTS

71. Within ten (10) days from the date of entry of this Order, the City of Philadelphia shall pay the United States the sum of $37,328.56 in settlement of the costs incurred by the United States in this action.

## IX

### RETENTION OF JURISDICTION

72. This Court shall retain jurisdiction of this action for the purpose of entering all orders, judgments and decrees which may be necessary to implement that relief provided herein and to effectuate the City of Philadelphia's full and complete compliance with Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Upon meeting the requirements of Part II of this Order, the City of Philadelphia may move the Court, upon sixty (60) days notice to the United States, for dissolution of this Order.

### APPENDIX A

LISTING OF EACH INDIVIDUAL FEMALE ENTITLED TO A BACK PAY AWARD UNDER PART V OF THIS ORDER, AND THE AMOUNT OF SUCH BACK PAY AWARD

| Name | Back Pay Award |
|---|---|
| Bachowsky, Barbara | $ 662.36 |
| Batezell, Patricia | 2,018.30 |
| Black, Shirley | 6,262.43 |
| Brace, Penelope | 3,465.20 |
| Carbonara, Jean | 3,095.15 |
| Carter, Carolyn | 500.00 |
| Chinn, Carolyn | 8,229.55 |
| Cianfrani, Maria | 2,453.87 |
| Cohen, Jennita | 13,759.59 |
| Collins, Michelle | 1,054.58 |
| Conn, Debra | 17,424.26 |
| Cuculino, Marie | 11,998.13 |
| Cuddhy, Barbara | 12,049.74 |
| Davis, Lucille | 1,931.17 |
| Degliomini, Donna | 3,095.15 |
| DeMay, Marie | 5,927.20 |
| DiBlasi, Maria | 2,636.58 |
| Donahue, Diane | 14,737.00 |
| Dorrah, Margaret | 10,437.80 |
| Dougherty, Barbara | 12,561.85 |
| Duff, Carol A. | 1,212.51 |
| Eldridge, Frances | 3,664.05 |
| Farr, Harriett | 416.38 |

| Name | Back Pay Award |
|---|---|
| Farrell, Stephanie | 6,290.55 |
| Felder, Ruth | 2,591.24 |
| Ferry, Mary Ellen | 1,457.70 |
| Flaherty, Philomena | 8,448.83 |
| Fowler, Edith | 9,472.25 |
| Geist, Carolyn | 2,018.30 |
| Giddings, Marjorie | 269.43 |
| Gramlich, Helen | 11,998.13 |
| Green, Karen | 5,510.31 |
| Green, Rhona | 8,921.51 |
| Hammett, Earlene | 8,406.76 |
| Hedgpeth, Marilyn | 630.59 |
| Higgins, Sharon | 2,762.44 |
| Hill, Virginia | 6,082.22 |
| Hughes, Ann | 6,290.55 |
| Hurst, Constance | 1,222.76 |
| Jones, Edith | 385.88 |
| Jones, Lois | 586.71 |
| Kelly, Donna | 5,274.93 |
| Kres, Susan | 2,115.74 |
| Laudenslager, Diane | 2,777.38 |
| Lynch, Jessica | 4,723.11 |
| McCullough, Ernestine | 500.00 |
| Malkowski, Roseann | 1,572.14 |
| Martin, Rozella | 6,338.42 |
| Masiejczyk, Deborah | 1,031.48 |
| Matthews, Patsy | 416.38 |
| Merschen, Mary Jo | 7,582.01 |
| Miller, Barbara | 7,541.14 |
| Miller, Ruth | 7,675.39 |
| Morgan, Andrea | 1,363.69 |
| Morris, Kathleen | 13,474.25 |
| Murawski, Kathleen | 5,274.93 |
| Nedby, Joan | 146.93 |
| Neiley, Frances | 9,497.79 |
| O'Donnell, Ann C. | 1,061.22 |
| O'Drain, Lilian | 7,388.49 |
| Pickersgill, Mary Joyce | 9,197.56 |
| Pritchard, Mari | 5,808.42 |
| Pryor, Hazel | 6,290.55 |
| Ralph, Carole | 1,377.91 |
| Rapp, Beatrice | 1,778.96 |
| Robinson, Corrine | 3,625.94 |
| Robinson, Jean | 3,889.88 |
| Rotolo, Maria G. | 630.59 |
| Rush, Maureen | 8,578.46 |
| Sanford, Lucy | 10,632.73 |
| Scheier, Alexis | 13,307.54 |
| Schrandt, Julie | 2,018.30 |
| Seymore, Leslie | |
| a) Police | 18,514.13 |
| b) Sergeant | 6,912.68 |
| c) Detective | 647.74 |
| Shuford, Marjorie | 5,765.27 |
| Sieradzki, Anna | 12,049.74 |
| Simon, Clare | 22,488.69 |
| Sinese, Lois | 5,510.31 |

| Name | Back Pay Award |
|------|---------------:|
| Smith, Sarah | 6,290.55 |
| Staulcup, Elsie | 4,850.54 |
| Stavrakis, Catherine | 8,454.50 |
| Stevenson, Regina | 2,550.20 |
| Strohm, Eileen | 146.93 |
| Sullivan, Patricia | 1,000.00 |
| Tenant, Serena W. | 2,860.73 |
| Terry, Shirley | 6,605.33 |
| Thomas, Loretta | 2,591.24 |
| Topa, Leoda | 4,272.85 |
| Vasaturo, Anne | 14,497.81 |
| Walton, Harlean | 1,411.65 |
| Warner, Marion | 6,290.55 |
| Warren, Martha | 5,274.93 |
| Waters, Rose | 7,567.86 |
| Williams, Brenda | 7,482.58 |
| Woodward, Lorraine | 4,723.11 |
| Workman, Moira | 14,308.58 |
| Young, Theresa | 1,747.97 |

## APPENDIX B

COUNTY OF PHILADELPHIA )
) ss
COMMONWEALTH OF PENNSYLVANIA )

### RELEASE

For and in consideration of the sum of [sum spelled out] Dollars ($_____) and all other relief to be provided me by the City of Philadelphia pursuant to the provisions of the Order entered by the Honorable Charles R. Weiner, United States District Judge, on [date] in *United States v. City of Philadelphia, et al.*, Civil Action No. 74–400 (E.D.Pa.), *Brace v. O'Neill, et al.*, Civil Action No. 74–339 (E.D.Pa.), and *Sanford et al., v. O'Neill, et al.*, Civil Action No. 78–1154 (E.D.Pa.), I, [full name of claimant], hereby release and discharge the City of Philadelphia, and its officials, employees and agents, of and from all legal and equitable claims arising out of those consolidated actions or any other legal, equitable or administrative claims or causes of action arising out of alleged sex discrimination with respect to job opportunities in the Philadelphia Police Department in violation of any Federal, state or local equal employ-

ment opportunity laws, statutes, regulations or ordinances occurring prior to the date of the execution of this Release. I further agree to discontinue any pending claim or action, whether legal, equitable or administrative, which I may have against the City of Philadelphia, or an official, employee or agent of the City, alleging sex discrimination with respect to job opportunities in the Philadelphia Police Department, except with respect to any question of attorneys fees and/or costs which may be pending in said action.

I carefully have read this Release as well as the accompanying Notice and Order of the Court entered [date]; I fully know and understand the contents thereof; and I execute this Release of my own free act and deed.

Signed this _____ day of _____ 1980.

 [signature]
 [full name typed]
 Social Security Number _____

Subscribed and sworn to before me this undersigned authority on this _____ day of _____, 1980, to certify which witness my hand and seal of office.

_____

NOTARY PUBLIC